STATE OF NORTH CAROLINA v. RAYMOND CRANFORD CLONTZ

No. 8019SC1003

(Filed 5 May 1981)

**Criminal Law § 89.7; Witnesses § 1– refusal to order psychiatric examination of rape victim**

    In this prosecution for second degree rape of a mentally retarded female, the trial court did not have the authority to grant defendant's motion to require a psychiatric examination of the alleged victim. Even if the trial court had the inherent authority to require the alleged victim to submit to a psychiatric examination, the trial court did not abuse its discretion in the denial of defendant's motion where an expert witness who testified for the State gave testimony which supported defendant's contentions and was damaging to the credibility and reliability of the alleged victim.

    Judge BECTON dissenting.

APPEAL by defendant from *Albright, Judge.* Judgment entered 15 May 1980 in Superior Court, CABARRUS County. Heard in the Court of Appeals 3 March 1981.

Defendant was tried on a bill of indictment charging him with second degree rape in that he did

    feloniously rape, ravish, carnally know, and engage in vaginal intercourse with Donna Safrit by force and against her will while the said Donna Safrit was mentally defective, mentally incapacitated and physically helpless and while the said Raymond Clontz knew and should reasonably have known that Donna Safrit was mentally defective, mentally incapacitated and physically helpless.

The State offered evidence tending to show that defendant forced a 20-year-old mentally retarded female to engage in intercourse with him against her will. The State also offered evidence tending to show that she had an I.Q. of less than 60, lived in a household of conflicts, was afraid of men and displayed a tendency to project blame on others. She also suffers from the afflictions of cerebral palsy.

Defendant did not testify but did offer evidence tending to show that he did not engage in intercourse with the alleged victim.

Defendant was found guilty as charged, and judgment imposing a prison sentence was entered.

*Attorney General Edmisten, by Assistant Attorney General J. Chris Prather, for the State.*

*Cecil R. Jenkins, Jr., for defendant appellant.*

VAUGHN, Judge.

Defendant first argues that he was not given enough time for discovery after the return of the bill upon which he was tried. Although we do not concede that defendant is correct in this, the question is relevant here only if he is correct in his second argument: that the judge should have granted his motion to require the victim of the alleged rape to submit to a psychiatric examination. We conclude that the judge correctly denied the motion, and, since that was the only additional discovery contemplated, there was no error in the denial of defendant's motion for continuance of the case.

In denying defendant's motion for a compulsory psychiatric examination of the State's principal witness, the trial judge followed, as must we, the decision of our Supreme Court in *State v. Looney*, 294 N.C. 1, 240 S.E. 2d 612 (1978), where the Court, after a thorough review of cases from other jurisdictions concluded:

> To require a witness to submit to a psychiatric examination, by a psychiatrist not selected by the witness, is much more than a handicap to the party proposing to offer him or her. It is a drastic invasion of the witness' own right of privacy. To be ordered by a court to submit to such an examination is, in itself, humiliating and potentially damaging to the reputation and career of the witness.
>
> . . . .
>
> . . . To require the alleged victim, especially in a sex offense case, to submit to such an inquisition into her most personal and private relations and past history, as a condition precedent to permitting her to testify against her alleged assailant would certainly discourage the honest, innocent victim of a genuine assault from going to the authorities with a complaint. This is not in the public interest. A

State v. Clontz

zealous concern for the accused is not justification for a grueling and harassing trial of the victim as a condition precedent to bringing the accused to trial.

. . . .

In our opinion, the possible benefits to an innocent defendant, flowing from such a court ordered examination of the witness, are outweighed by the resulting invasion of the witness' right to privacy and the danger to the public interest from discouraging victims of crime to report such offenses and other potential witnesses from disclosing their knowledge of them.

We think that so drastic a change in the criminal trial procedure of this State, if needed, should be brought about, as was done in Massachusetts, by a carefully considered and drafted statute, not by our pronouncement leaving the matter to the unguided discretion of the trial judge.

294 N.C. at 26-28, 240 S.E. 2d at 626-27.

We also hold that this case falls within the secondary position taken by Justice Lake for the majority and the position taken by Justice Exum in his concurring opinion. Even if the trial judge should be said to have the power to order an unwilling witness for the State to submit to a psychiatric examination, the case at bar is not one of those rare instances in which it should be exercised. Among other things, we note that defendant would have been hard pressed to have found expert testimony more friendly to his contentions and more damaging to the credibility and reliability of the alleged victim than that offered by the doctor who testified for the State. The record fails to show any compelling need for further psychiatric examination.

Defendant's remaining assignments of error have been considered. No prejudicial error has been shown.

No error.

Judge WELLS concurs.

Judge BECTON dissents.

Judge BECTON dissenting:

I respectfully dissent from the Court's decision upholding the trial judge's refusal to order a psychiatric examination of the prosecuting witness, Donna Safrit. In support of its position, the majority relies primarily on the North Carolina Supreme Court decision in *State v. Looney*, 294 N.C. 1, 240 S.E. 2d 612 (1978). The issues discussed by the court in *Looney* were essentially whether or not a trial judge has any discretionary authority upon motion by the defendant to order a psychiatric examination of a prosecuting witness, and if discretion exists, what constitutes abuse of that discretion.

After a lengthy analysis of the case law in other jurisdictions indicating a trend in favor of trial judges having discretionary power to compel such an examination [1], the *Looney* court said that "[i]n our opinion, the possible benefits to an innocent defendant, flowing from such a court ordered examination of the witness, are outweighed by the resulting invasion of the witness' right to privacy. . . . "294 N.C. at 28, 240 S.E. 2d at 627. The court then went on to opine that:

> [i]f, however, we were to hold that judges of trial courts in North Carolina have inherent power, in their discretion, to order an unwilling witness to submit to a psychiatric examination, we would hold that, under the circumstances of the present case, it was not an abuse of that discretion to deny the motion of this defendant.

294 N.C. at 28, 240 S.E. 2d at 627. While strongly suggesting that legislative guidance is needed in this area, nowhere in the *Looney* opinion does the court unequivocally hold that a trial judge does not have the inherent discretionary authority to

---

1. *See*, Juviler, *Psychiatric Opinions as to Credibility of Witnesses: A Suggested Approach*, 48 Calif. L. Rev. 648, 663 (1960) "Most of the courts which have dealt with this problem have recognized the authority of the trial judge to order a psychiatric examination *of a witness on the question of credibility.* The principle established by the majority of the cases is that the judge has the discretion to order such an examination, although the failure to do so had rarely been held an abuse of discretion." *Id. See also Sex Crime — Psychiatric Examination*, 18 A.L.R. 3d 1433, 1439 (1968).

order such an examination. [2] In fact, the court points out that "[i]t is to be observed that the denial of the defendant's motion for such order by Judge Clark was not upon the ground that the court lacked the authority to make such order, but upon the ground that, under the circumstances of this case, such order would not be issued." 294 N.C. at 17, 240 S.E. 2d at 621.

In his concurring opinion in *Looney*, Justice Exum offers the following analysis:

I would conclude that our trial judges have the power, to be carefully used in the exercise of their sound discretion, to order in appropriate circumstances the psychiatric examination of any witness as a condition to receiving the testimony of that witness. ...

Defendant should be required to make a strong showing that the witness' mental make up is such that a psychiatric examination would probably reveal either that the witness is incompetent or that the witness' credibility may be subject to serious question. Situations calling for the entry of such an order would, it seems, be rare indeed. But if called for, our judges should have the power to enter the order.

294 N.C. at 29, 240 S.E. 2d at 628.

The inconclusive nature of the majority opinion in *Looney* and the fact that the question of the trial judge's authority to order an examination was not squarely before the court lead me to believe that our Supreme Court has not definitively ruled that trial judges have no discretionary power to order psychiatric examinations where appropriate. Indeed, the better view, I think, is the one ascribed to above by Justice Exum and by an increasing number of other jurisdictions. *See Forbes v. State*, 559 S.W. 2d 318 (Tenn. 1977); *see also* Annot., 18 A.L.R. 3d 1433 (1968).

---

2. *See State v. Looney: Defendants' Need for Court-Ordered Psychiatric Evaluations of Witnesses' Credibility Outweighed by Witnesses' Right to Privacy*, 57 N.C.L. Rev. 448, 451 (1979). The opinion "suggests that the supreme court only reached a firm conclusion on the propriety of ordering an exam, not on the power of the court to order the exam." *Id.* at 45ln.25. Significantly, the State in *Looney* conceded in its Brief to the Supreme Court that the lower court judge did in fact have discretionary authority to order an examination, but on the facts of the case, the judge had not abused that discretion. *Id.* at 45ln.26.

The *Looney* court's emphasis on balancing the defendant's need for a court ordered psychiatric evaluation of the prosecuting witness for credibility and competency purposes against the witness' right to privacy indicates that in at least some situation contemplated by the court, the defendant's interests might prevail. The case at bar presents, in my opinion, such a fact situation, and one distinguishable from the facts in *Looney*.

On the record before us, the defendant was prosecuted and convicted under a statute making it unlawful to engage in vaginal intercourse with another person: "(2) Who is mentally defective, mentally incapacitated, or physically helpless, and the person performing the act knows or should reasonably know the other person is mentally defective, mentally incapacitated, or physically helpless." G.S. 14-27.3. In this case, then, the indictment[3] itself established that Ms. Safrit was mentally infirm, and in fact mentally retarded with an IQ of less than 60. In *Looney*, the defendant argued that the particularly violent manner in which the witness killed the defendant's wife was sufficient to establish a psychological instability necessitating further examination; the court rejected this rationale.

The evidence at trial in the case *sub judice* also indicates that Ms. Safrit's testimony was corroborated only by her brother-in-law who repeated on the stand what Ms. Safrit had told him the day after the alleged rape took place. No independent corroborative evidence was offered by the State. The defendant's evidence directly contradicted this evidence and tended to show that Raymond Clontz was on the phone and in the presence of David Hargett during the entire time that Ms. Safrit alleges the rape occurred. Courts in other jurisdictions have been most willing to order psychiatric examinations of prosecuting witnesses in sex offense cases in which there is little or no corroboration of the prosecuting witness' charges. 18 A.L.R. 3d at 1439.

---

3. The Indictment reads, "The Jurors for the State upon their oath present that on or about the 2nd day of February, 1980, in Cabarrus County Raymond Cranford Clontz unlawfully and wilfully did feloniously carnally know and abuse Donna Safrit who was at the time mentally defective and physically helpless."

Moreover, in a psychological examination of Ms. Safrit conducted by the North Carolina Department of Vocational Rehabilitation ten months prior to trial, it was revealed that she had a tendency to project blame onto others and was afraid of men believing them to be people "who come to get you or hurt you or rape you." The examining psychologist, Dr. Crombes, testified:

> Ms. Safrit has the tendancy [sic] to project blame onto others. She is a mistrustful kind of person, sensitive to what people were thinking or feeling about her and she would have a hard time seeing things as being her fault. I don't see her as being paranoid, but she has a personality attribute in which she has a hard time recognizing what part she plays in situations. Her tendancy [sic] to project blame onto others is somewhere between mild and moderate in degree. In a conflictual situation she would accept blame, and perhaps at least as often would reject it. (Record testimony of Dr. Peter Crombes.)

It is important to note that Dr. Crombes was a witness for the State, and no attempt was made by the State to prevent Dr. Crombes from testifying in great detail about Ms. Safrit's mental condition, "her most personal and private relations and past history. . . ." 294 N.C. at 27, 240 S.E. 2d at 627. Whatever right to privacy Ms. Safrit had, the State itself planned and made the first "drastic invasion" of that right to privacy. The State should not now be permitted successfully to argue that a further examination on defendant's motion would be a serious invasion of Ms. Safrit's remaining privacy rights. An additional examination of Ms. Safrit would not have invaded her right to privacy any more so than the public airing contemplated and made by the State's own case in chief. On balance then, the witness' right to privacy in this case can hardly be said to outweigh the constitutional rights of the defendant to confront and effectively cross examine this witness.

The majority opinion takes the position that the testimony by Dr. Crombes was so helpful to the defendant and so damaging to the credibility of the alleged victim that the defendant "would have been hard pressed to have found expert testimony more friendly to his contentions. . . ." We are jurists, not jurors, not psychologists, not psychiatrists. It is difficult therefore, if

not impossible, for this court to hold that a psychiatric examination would not have disclosed additional evidence helpful to the defendant's attempt at establishing the witness' lack of credibility and competency. The tests conducted by the Department of Vocational Rehabilitation were designed to elicit information about Ms. Safrit's employability; the tests were not specifically designed to determine her credibility and competency to testify. If the court finds the information from these tests damaging to the witness, one wonders what would be elicited by a psychiatric examination designed for the express purpose of analyzing Ms. Safrit's competency to testify and overall credibility for the truth.

This dissent is in no way a clarion call in support of Dean Wigmore's admonition that "no judge should ever let a sex offense charge go to the jury unless the female complainant's sexual history and mental make up have been examined and testified to by a qualified physician." 3A Wigmore, Evidence §924a (1970). It is, however, a recognition that in certain rare cases, like the one at bar, the trial judge should in his discretion order a phychiatric examination of the prosecuting witness. In balancing the defendant's Fifth and Fourteenth Amendment due process rights to confront and effectively cross examine his accuser against the possible invasion of the prosecuting witness' right to privacy, the accused's rights in this case are superior. Under the facts and circumstances of this case then, I dissent from the court's decision upholding the trial judge's denial of defendant's motion and would order a new trial to take place after a thorough psychiatric examination of the prosecuting witness had been conducted.